**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO. 9:13-CV-80377-DMM-DLB**

| | |
|---|---|
| **PRISCILLA Y. DAVIS,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| **CONSUMERINFO,** | ) ) |
| Defendant. | ) ) |

**CONSUMERINFO.COM, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

For the reasons set forth below, Defendant ConsumerInfo.com, Inc. ("CIC") opposes Plaintiff Priscilla Davis's Motion for Partial Summary Judgment ("PSJ") (Doc. 56) and respectfully requests that Plaintiff's motion be denied.[1]

**I.    INTRODUCTION**

The gravamen of Plaintiff's complaint and PSJ is that she never enrolled in CIC credit monitoring and therefore never agreed to permit CIC to obtain credit disclosures from certain consumer reporting agencies ("CRAs") on her behalf.  As CIC explains in detail below, Plaintiff's claims fail as a matter of law because CIC's records show that Plaintiff enrolled in CIC's Triple Advantage credit monitoring program, thus giving CIC a permissible purpose to

---

[1] While Plaintiff certified to the Court that she served her PSJ on June 27, 2014, she did not in fact do so.  The United States Postal Service postage sticker indicates that postage was paid on June 30, 2014.  *See* Declaration of Rebecca B. Crawford, attached hereto as Exhibit 1. CIC has calculated its response deadline of today's date based on the purported date of service of June 27, 2014, and therefore files its Response in Opposition today in an abundance of caution. Further, CIC reserves the right to supplement its Response in Opposition with any evidence obtained from Plaintiff's deposition, which is scheduled for July 15, 2014, and/or following the review of any discovery responses which may be supplemented following a ruling on CIC's Motion to Compel (Doc. 50).

request the consumer disclosures, and that CIC had a reasonable belief that it had a permissible purpose to request the consumer disclosures on Plaintiff's behalf, thereby negating Plaintiff's claims.

**Plaintiff's FCRA Claims Fail.**  In her first and second causes of action, Plaintiff alleges that CIC negligently and/or willfully obtained her consumer report from two CRAs without a permissible purpose pursuant to § 1681b of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*.  *See* Verified First Amended Complaint ("FAC") (Doc. 40 at ¶¶ 8-10, pp. 2-3 and Counts I and II, pp. 5-6.)  However, Plaintiff's FCRA claims fail because CIC obtained Plaintiff's consumer credit information for permissible purposes under the FCRA.

*First*, Plaintiff's FCRA claims fail because CIC's records demonstrate that Plaintiff enrolled in CIC's Triple Advantage credit monitoring program on March 18, 2010, and was a member through July 2011.  *See* ConsumerInfo.com, Inc.'s Response to Plaintiff's Undisputed Facts Summary ("Response to UFS") (filed concurrently), ¶ 21 (Declaration of David Williams in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Williams Decl."), ¶ 5), attached hereto as Exhibit 2.  To enroll in the Triple Advantage program, a consumer must provide correct identifying information, including his or her Social Security number and date of birth, and answer strict security questions.  Response to UFS, ¶¶ 27-30 (Williams Decl., ¶ 11-14 and Decl. Exs. C-D).  These strict security questions, called "out-of-wallet" questions (the answers to which would not be found in a consumer's wallet), are extremely difficult for anyone other than the consumer to answer and are derived from his or her consumer credit file. Response to UFS, ¶ 30 (Williams Decl., ¶ 14 and Decl. Ex. D).  Plaintiff correctly answered these security questions and provided a correct Social Security number and date of birth in order to enroll in Triple Advantage.  Response to UFS, ¶¶ 24, 27-30 (Williams Decl., ¶¶ 7, 11-14 and

Decl. Exs. C-D). Through CIC's Terms and Conditions, which must be accepted to complete the Triple Advantage enrollment process, the consumer expressly provides CIC with a permissible purpose to obtain the consumer's credit information from CRAs, such as Experian Information Solutions, Inc. ("Experian") or Trans Union LLC ("Trans Union"), so that CIC may in turn provide that information to the consumer. Response to UFS, ¶ 25 (Williams Decl., ¶¶ 8, 9 and Decl. Ex. A). A CRA (*e.g.*, Experian or Trans Union) may furnish a consumer report to a person (*e.g.*, CIC) "in accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2).

*Second*, Plaintiff's FCRA claims fail because CIC had a reasonable good faith belief that it had a permissible purpose to request the consumer disclosures on Plaintiff's behalf based on the correctly answered security questions. Because "even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes," "the FCRA also extends to the conduct of parties who ***request*** credit information." *Stonehart v. Rosenthal*, No. 01-CV-651, 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001) (internal quotations omitted) (emphasis added). Importantly, "so long as a user has a reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1276 (D. Md. 1996). Thus, because CIC had a reasonable belief that Plaintiff requested the monitoring based on the correctly answered security questions confirming Plaintiff's identity, Plaintiff's FCRA claims against CIC also fail for this reason.

**Plaintiff's FDCPA Claim Also Fails.** To the extent that Plaintiff is attempting to move for summary judgment on her Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* claim in her third cause of action, that claim also fails. *See* FAC (Doc. 40 at Count

III, p. 7) and PSJ (Doc. 56, p. 15.) Plaintiff has not established a single fact supporting this claim. As a threshold matter, CIC is not a debt collector. Response to UFS, ¶ 35 (Williams Decl., ¶ 19). Moreover, Plaintiff has not established a debt that she owes, much less one that CIC sought to collect. Plaintiff's claim necessarily fails.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation and quotation marks omitted).

Plaintiff bears the burden of proof on each of her claims. For issues on which the movant would bear the burden of proof at trial, "that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation and quotation marks omitted) (emphasis in original).

## III.  BACKGROUND

ConsumerInfo.com ("CIC") is one of the leading providers of online consumer credit disclosures, credit scores and credit monitoring products in the United States. Response to UFS,

- 4 -

¶ 18 (Williams Decl., ¶ 2). The consumer credit products offered by CIC, which are provided directly and *solely* to consumers—as opposed to third parties, such as credit grantors—may be purchased through various websites, including freecreditreport.com, freecreditscore.com, and experian.com, which allow a consumer to, among other things, instantly receive a copy of their Experian consumer credit disclosure and score, as well as enroll in credit monitoring products like Triple Advantage. Response to UFS, ¶ 20 (Williams Decl., ¶ 4). CIC's membership records confirm that Plaintiff Priscilla Davis enrolled in CIC's Triple Advantage credit monitoring program on March 18, 2010, at 4:41 p.m. PST through the Experian.com website and was a Triple Advantage member until July 13, 2011, when the membership was cancelled. Response to UFS, ¶ 21 (Williams Decl., ¶ 5).

To enroll in credit monitoring, a consumer must: (1) set up an account by entering his or her identifying information (including name, address, Social Security number, and date of birth), (2) answer specific security questions to confirm his or her identity, (3) provide credit card payment information, and (4) agree to Terms and Conditions for use of the service. Response to UFS, ¶¶ 26-30 (Williams Decl., ¶¶ 10-14 and Decl. Exs. B-D). The consumer will not be provided with his or her credit information until he or she accurately answers multiple security questions on the authentication page prior to completion of the order process. Response to UFS, ¶ 30 (Williams Decl., ¶ 14 and Decl. Ex. D). The questions typically seek specific information about the consumer's exact, specific credit history, such as the monthly payment amount of a home or car loan, and are difficult for anyone other than the consumer to answer correctly. Response to UFS, ¶ 30 (Williams Decl., ¶ 14 and Decl. Ex. D). The following are examples of just some of the types of security questions that would be asked of a consumer to confirm their

identity prior to enrollment, the fully formatted web-page of which is included in the concurrently filed declaration of David Williams:



Response to UFS, ¶ 30 (Williams Decl., ¶ 14 and Decl. Ex. D).

These questions are randomly derived from a question bank, and are used to authenticate the consumer's identity—incorrect answers will result in denial of the request. CIC's records show that Plaintiff correctly answered the out-of-wallet security questions and that Plaintiff's correct Social Security number and date of birth were submitted, thus confirming Plaintiff's

- 6 -

identity as the enrollee.[2]  Response to UFS, ¶ 30 (Williams Decl., ¶ 14).  CIC's records also show that Plaintiff's correct street address and zip code were used to enroll in the program.[3]  Response to UFS, ¶ 24 (Williams Decl., ¶ 7).

All transactions between consumers and CIC, including CIC's credit monitoring products, are subject to CIC's Terms and Conditions.  Response to UFS, ¶ 25 (Williams Decl., ¶¶ 8, 9 and Decl. Ex. A).  As part of the enrollment process, Plaintiff agreed to CIC's Terms and Conditions.  Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Exs. A,C).  Through the acceptance of the Terms and Conditions, Plaintiff gave CIC a permissible purpose to obtain her credit information from the CRAs.  Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Exs. A,C).  In substantially similar form, the applicable Terms and Conditions provided:

> You understand and agree that by submitting your order you are providing "written instructions" in accordance with the Fair Credit Reporting Act, as amended ("FCRA"), for CIC to obtain information from your personal credit profile from Experian or any other credit reporting company and to obtain information from the personal credit profile, if any, of any minor child whom you have enrolled in ChildSecureSM. You authorize CIC to access your credit profile (and those of any minor children whom you have enrolled in ChildSecureSM) to verify your identity (or those of any minor children whom you have enrolled in ChildSecureSM) and to provide credit monitoring, credit reporting, credit scoring, identity monitoring, fraud resolution and card registry products. You also authorize CIC to access your credit profile (or those of any minor children whom you have enrolled in ChildSecureSM) to perform other functions related to providing the product(s) that you have ordered or may order, including to verify your identity or any certification that you may be required to make.

Response to UFS, ¶ 25 (Williams Decl., ¶¶ 8, 9 and Decl. Ex. A).

---

[2] Without correct identification information, CIC would not have been able to access Plaintiff's credit information from any consumer reporting agency.  Further, Plaintiff's identifying information was authenticated through national consumer reporting agency Experian Information Solutions, Inc.'s systems.

[3] The street address and zip code matched the ones submitted by Plaintiff when she first filed suit against CIC.  *See* Complaint (Doc. 1).

The membership fees were paid for by credit card. Response to UFS, ¶ 22 (Williams Decl., ¶ 6). Although Plaintiff claims that she never paid for the service, the source of payment for the monitoring is not dispositive of whether CIC had a reasonable basis to believe that Plaintiff requested the monitoring service. Response to UFS, ¶ 22 (Williams Decl., ¶ 6). There are multiple reasons why the name on a credit card used to pay for the service may not match the name of the consumer to be enrolled in the product, such as surnames not matching because of someone maintaining their maiden name, or someone paying on behalf of their spouse or another family member, among others. The point is, CIC maintains strict procedures to ensure that it only provides credit monitoring to the actual consumer requesting the service; unless the enrollee can correctly answer certain "out-of-wallet" security questions pertaining to that consumer, the enrollment will be denied. Response to UFS, ¶¶ 22, 30 (Williams Decl., ¶¶ 6, 14 and Decl. Ex. D). These security questions were correctly answered prior to enrolling Plaintiff in credit monitoring, which confirmed her identity. Response to UFS, ¶¶ 22, 30 (Williams Decl., ¶¶ 6, 14). And importantly, the credit monitoring was maintained and paid for almost two years. Response to UFS, ¶ 22 (Williams Decl., ¶ 6). CIC issued alerts for credit information updates to Plaintiff for that entire period.

In July 2011, Plaintiff's membership was cancelled. Response to UFS, ¶ 21 (Williams Decl., ¶ 5). CIC's records indicate that, following the initial enrollment, neither Plaintiff nor anyone else accessed the credit information obtained for her. Response to UFS, ¶ 31 (Williams Decl., ¶ 15). Nearly two years after cancellation, in March 2013, CIC received a letter from Plaintiff demanding $55,000 for alleged impermissible "pulls" of her credit and threatening legal action if CIC did not agree to settle within 20 days. Response to UFS, ¶ 34 (Williams Decl., ¶ 18 and Decl. Ex. E).

### IV.     ARGUMENT AND CITATIONS TO AUTHORITY

#### A.     <u>Plaintiff's claims that CIC negligently or willfully violated the FCRA by obtaining her consumer report without a permissible purpose fail.</u>

To establish a willful or negligent violation of section 1681b of the FCRA, "a plaintiff must prove each of the following: (i) that there was a consumer report, (ii) that defendants used or obtained it, (iii) that they did so *without a permissible statutory purpose*, and (iv) that they acted with the specified culpable mental state." *Shepherd-Salgado v. Tyndall Fed. Credit Union*, No. 11-0427-WS-B, 2011 U.S. Dist. LEXIS 129128, at *12 (S.D. Ala. Nov. 7, 2011) (emphasis added); *see also Pinson v. United Recovery Sys., LP*, No. 12-80792-Civ, 2013 WL 3717739, at *3 (S.D. Fla. July 15, 2013).

##### 1.     <u>Plaintiff enrolled in Triple Advantage, giving CIC a permissible purpose.</u>

Plaintiff gave CIC a permissible purpose to obtain her credit information from the CRAs when she was enrolled in credit monitoring.  Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Ex. A).  As with all transactions between consumers and CIC, including CIC's credit monitoring products, Plaintiff's enrollment in Triple Advantage was subject to CIC's Terms and Conditions.  Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Ex. A).  Plaintiff agreed to CIC's Terms and Conditions during the enrollment process.  Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Ex. A).  The acceptance of the Terms and Conditions expressly provides CIC with "written instructions" in accordance with the FCRA to obtain the consumer's credit information from the CRAs **<u>so that information may then be provided to the consumer</u>**.  Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Ex. A).  Accordingly, pursuant to section 1681b(a)(2), Plaintiff gave CIC a permissible purpose

to obtain her credit information from the CRAs. Response to UFS, ¶¶ 25, 29 (Williams Decl., ¶¶ 8, 9, 13 and Decl. Ex. A).[4]

### 2. Even if Plaintiff herself did not enroll, CIC had a reasonable basis to believe it had a permissible purpose based on the correctly answered security questions.

The law is clear that "so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1276 (D. Md. 1996) (defendant had a reasonable basis to believe the debt belonged to plaintiff based on the information provided by creditor, including plaintiff's Social Security number, account number, and balance owed); *see also Pinson v. Monarch Recovery Mgmt.*, No. 12-80480-CIV-Marra/Brannon, 2013 WL 961308, at *2 (S.D. Fla. March 12, 2013); *Bickley v. Dish Network*, No. 13-5956/13-5979, 2014 U.S. App. LEXIS 8883, at *22-23 (6th Cir. May 13, 2014) (affirming summary judgment in favor of putative credit grantor who requested consumer report of identity theft victim as a result of identity thief's request for credit using victim's name and noting that the putative credit grantor "reasonably believed the transaction was initiated by the consumer").

In *Flores v. I.C. System*, the Southern District of Florida granted summary judgment in favor of a defendant who maintained a *reasonable* belief that it had a permissible purpose to obtain a consumer's credit report. *See Flores v. I.C. System*, Case No. 13-21352-CIV-Altonaga/O'Sullivan, 2014 U.S. Dist. LEXIS 48333, at *12 (S.D. Fla. Apr. 8, 2014). In that case, a consumer maintained that he did not have any debt with the defendant, a collection

---

[4] By signing up for Triple Advantage credit monitoring, Plaintiff initiated a contractual relationship with CIC, which also gave CIC a permissible purpose to access Plaintiff's credit information under the "legitimate business needs" exception in § 1681b(a)(3)(F)(i). 15 U.S.C. § 1681b(a)(3)(F)(i) provides that a consumer report can be permissibly obtained by a person who has a "legitimate business need" to request it in connection with a business transaction that is initiated by the consumer.

.

agency, and insisted that the Social Security and telephone numbers on file with the defendant were incorrect and were not his. *Id.* at *11. The court noted that the identifying information in the defendant's file matched the identifying information the consumer had provided in three prior bankruptcies and that the consumer had not initially disputed the debt. *Id.* The Court then correctly held:

> Even assuming [the defendant] was somehow mistaken about the [consumer's] identity, the undisputed facts show [the defendant] ***did not violate the FCRA***. . . . Based on the information provided by [the original credit grantor], it was reasonable for [the defendant] to believe it was collecting a debt owed by [the consumer] when it accessed his credit report. There is no evidence suggesting [the defendant] willfully or negligently violated the FCRA." *Id.* at *12 (emphasis added).

Here, even if Plaintiff herself did not enroll in CIC's Triple Advantage credit monitoring program, CIC reasonably believed that Plaintiff had in-fact enrolled given that Plaintiff (or someone acting on her behalf) correctly answered the stringent out-of-wallet security questions to confirm Plaintiff's identity, and correctly provided Plaintiff's identifying information, including her Social Security number and date of birth. Response to UFS, ¶¶ 24, 30 (Williams Decl., ¶¶ 7, 14 and Decl. Ex. D). Simply put, CIC had a reasonable belief that it had a permissible purpose to obtain Plaintiff's information, and Plaintiff's alleged FCRA violations for obtaining credit information without a permissible purpose fail for this reason.

Plaintiff's argument that she corresponded with CIC in a purported effort to dispute CIC's consumer file inquiries in March 2013 is a red herring. Aside from the fact that Plaintiff's letters[5] were merely settlement demand letters, they were allegedly sent nearly two years after her Triple Advantage membership ended in July 2011 and over a year after she allegedly learned

---

[5] CIC received only one of Plaintiff's purported "dispute" letters, a letter dated March 7, 2013. Response to UFS, ¶ 34 (Williams Decl., ¶ 18 and Decl. Ex. E). CIC does not have any record of receiving a letter dated March 19, 2013. Response to UFS, ¶ 34 (Williams Decl., ¶ 18).

of CIC's inquiries in December 2011. Response to UFS, ¶¶ 2, 3, 21 (Williams Decl., ¶¶ 5, 18 and Decl. Ex. E). Thus, the letters have no bearing on whether CIC reasonably believed that Plaintiff had enrolled in Triple Advantage credit monitoring in March 2010 and continued that membership through July 2011. Likewise, Plaintiff's references to Article 1, § 10, and the 14th Amendment to the United States Constitution, which place various limits on the states within the United States, and to the Federal Rules of Evidence provide no support for Plaintiff's claims.

### 3. CIC acted neither negligently nor willfully.

Importantly, the FCRA does not provide for strict civil liability; a cause of action requires breach of duty plus either (i) negligence leading to damage or (ii) willful conduct. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1160 (11th Cir. 1991); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60, 127 S. Ct. 2201, 2208-10 (2007), (interpreting the statute for an alleged breach of duty to reinvestigate disputed information). The FCRA's negligence provision requires the party seeking redress to establish actual damages as part of the claim. "Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the failure . . . ." 15 U.S.C. § 1681o.

A claim for willfulness requires proof that a defendant violated the FCRA with knowledge or reckless disregard for the law. *Harris v. Mexican Specialty Foods*, 564 F.3d 1301, 1310 (11th Cir. 2009) (citation omitted). "A company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. A

defendant's conduct is reckless only if it was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." *Id.* at 69-70.  Therefore, even when a court disagrees with a party's reading of the FCRA, it may not impose liability for a reckless and, therefore, willful violation of the statute, unless the party's reading is "objectively unreasonable."  *Id.*  If a company's interpretation of the statutory text is not "objectively unreasonable," the interpretation "falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* at 70.

Given the safeguards in place via CIC's stringent enrollment and authentication processes, Plaintiff cannot show that CIC acted negligently or willfully in obtaining her credit information from the CRAs—information which was obtained for Plaintiff's benefit to be transmitted to Plaintiff, only.  Response to UFS, ¶ 33 (Williams Decl., ¶ 17).  Indeed, Plaintiff points to no evidence that CIC's enrollment or authentication processes are faulty.  Plaintiff's sole "evidence" in support of her FCRA claims are partial and heavily-redacted copies of Experian and Trans Union consumer disclosures provided to Plaintiff.  *See* Plaintiff's UFS, ¶ 1 and Plaintiff's PSJ Ex. E; *see also* Response to UFS, ¶ 1 (Williams Decl., ¶¶ 5, 8, 9, 13 and Decl. Ex. A) and ¶¶ 21-31 (Williams Decl., ¶¶ 5-15 and Decl. Exs. A-D).  The consumer disclosures, showing CIC "soft" inquiries (inquiries that display only to the consumer) generated as a result of CIC's monitoring, provides no support for Plaintiff's claims that CIC negligently or willfully violated the FCRA.  It merely indicates the fact that soft inquiries were placed on Plaintiff's disclosure (not report), which was intended solely for Plaintiff.  Response to UFS, ¶ 32, (Williams Decl., ¶ 16).  Plaintiff, herself, acknowledges that the inquiries are "soft" inquiries in her March 7, 2013, correspondence to CIC.  Response to UFS, ¶ 32, (Williams Decl., ¶ 16); *see also* Plaintiff's PSJ Ex. A.

Further, Plaintiff cannot establish a willful violation because, again, "so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." See *Korotki*, 931 F. Supp. At 1276, *Monarch Recovery Mgmt.*, 2013 WL 961308, at *2; *Bickley*, 2014 U.S. App. LEXIS 8883, at *22-23; *Flores*, 2014 U.S. Dist. LEXIS 48333, at *12.  Here, CIC only obtained Plaintiff's credit information after she (or someone acting on her behalf) passed its strict authentication procedures during enrollment. Response to UFS, ¶ 30 (Williams Decl., ¶ 14 and Decl. Ex. D).  CIC reasonably believed that Plaintiff had requested Triple Advantage membership with CIC, and that it had a permissible purpose to obtain such information.  Response to UFS, ¶¶ 21, 25-30 (Williams Decl., ¶¶ 5, 8-14 and Decl. Exs. A-D).   Unable to demonstrate a willful violation, Plaintiff is not entitled to any punitive or statutory FCRA damages.  See 15 U.S.C. § 1681n.

**B.** **Plaintiff's FDCPA claim fails because CIC is not a debt collector and Plaintiff does not allege any actual collection activity.**

To the extent that Plaintiff is attempting to move for summary judgment on her Fair Debt Collection Practices Act  ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* claim in her third cause of action, that claim also fails.  See FAC (Doc. 40 at Count III, p. 7) and PSJ  (Doc. 56, p. 15.)  To establish an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." See *Flores*, 2014 U.S. Dist. LEXIS 48333,  at *13 (citation and quotation marks omitted). Plaintiff's bare allegations are insufficient to establish a violation, and she has not established any facts whatsoever in her PSJ that would support such a claim.

As a threshold matter, CIC is not a debt collector.  Response to UFS, ¶ 35 (Williams Decl., ¶ 19).  As described above, CIC provides credit monitoring services to consumers by

obtaining credit information from CRAs to aid consumers in monitoring their credit. Response to UFS, ¶¶ 18, 19 (Williams Decl., ¶¶ 2, 3). CIC does not furnish information to the CRAs. Response to UFS, ¶ 37 (Williams Decl., ¶ 21). CIC has not attempted to collect on any debt allegedly owed by Plaintiff. Response to UFS, ¶ 35 (Williams Decl., ¶ 19). Plaintiff even admits, upon information and belief, in her FAC that CIC is not a debt collector. *See* FAC (Doc. 40 at ¶ 18, p. 4 (bottom).) This admission alone is fatal to Plaintiff's FDCPA claim. Further, Plaintiff has not identified (and cannot identify) any debt that CIC allegedly sought to collect or any debt collection activity, prohibited or otherwise, in which CIC was allegedly engaged. Plaintiff is left with conclusory allegations. She is unable to show any debt allegedly owed or any debt collection activity by CIC. Her FDCPA claim fails.

## V.     CONCLUSION

Because Plaintiff has not established any facts sufficient to support her claims, Plaintiff Motion for Partial Summary Judgment should be denied.

Dated:  July 14, 2014 Respectfully submitted,

/s/ Maria H. Ruiz
Maria H. Ruiz
Florida Bar No. 182923
MRuiz@kasowitz.com
KASOWITZ BENSON TORRES & FRIEDMAN LLP
1441 Brickell Avenue
Suite 1420
Miami, FL  33131
Telephone: (786) 587-1044
Facsimile: (305) 675-2601

Rebecca B. Crawford
Georgia Bar No. 194180
*Admitted Pro Hac Vice*
JONES DAY
1420 Peachtree St. NE
Suite 800
Atlanta, GA  30309
Telephone: (404) 581-8825
Facsimile: (404) 581-8330


*Attorneys for Defendant ConsumerInfo.com, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of July, 2014, I caused the foregoing to be served by first class U.S. mail, postage prepaid, as follows:

**SERVICE LIST:**

Priscilla Y. Davis
480 W. 35th St.
Riviera Beach, FL  33404

*Plaintiff*

>*/s/ Maria H. Ruiz*_____
>*Attorney for Defendant*
>*ConsumerInfo.com, Inc.*